UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

THEODORE PUCKETT,

                Defendant.

------------------------------------X

10 Cr. 06-2 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-12-10

**Sweet, D.J.**

       On April 26, 2010, Theodore A. Puckett ("Puckett" or "Defendant") was found guilty of one count of obstructing the entry of a health care clinic that provides reproductive health services, in violation of 18 U.S.C. § 248(a)(1). For the reasons set forth below, Puckett will be sentenced to four months' imprisonment to be followed by one year of supervised release, and required to pay a special assessment of $50.

**Prior Proceedings**

       On January 4, 2010, Information 10 CR 006 (RWS) was filed in the Southern District of New York. Count 1 charges that on December 12, 2009, Puckett and Richard R. Dugan


("Dugan") physically obstructed entryways of a clinic located on Bleecker Street in Manhattan that provides reproductive health services, and interfered with staff and patients attempting to enter the clinic, because they were providing and obtaining reproductive health services, in the Southern District of New York, in violation of 18 U.S.C. § 248(a)(1).

On April 26, 2010, Puckett and Dugan appeared before this Court for a one-day bench trial and were both found guilty of Count 1 of Information 10 CR 006 (RWS).

Puckett's sentencing is currently scheduled for October 12, 2010.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. As the instant offense is a Class B Misdemeanor, the advisory Guidelines are

not applicable.  Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered all of the factors set forth in § 3553(a), the imposition of a sentence in the middle of the statutory range is warranted.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Puckett's personal and family history.

**The Offense Conduct**

In December 2009, the Federal Bureau of Investigation ("FBI") received a complaint of the obstruction of the entry to a medical clinic in Manhattan. A Special Agent with the FBI was

assigned and investigated the reported incident. The facts of the case were gathered through the special agent's conversations with law enforcement agents, employees of the clinic and the examination of reports and records to gather facts regarding the case.

The case agent spoke with a security guard ("Guard") and an employee ("Employee"), who worked at the reproductive health services clinic located on Bleecker Street in Manhattan (the "Clinic"). The case agent learned that on December 12, 2009, Guard-1 arrived at the Clinic and observed a male, later identified as Dugan, standing in front of and blocking the Clinic's main entrance.

Dugan told Guard that the Clinic was closed today and that Guard could not enter. Guard made several attempts to get around Dugan, but Dugan used his body to prevent Guard's entry into the Clinic. After several attempts, Guard was able to maneuver into the Clinic.

When inside the Clinic, Guard observed that Dugan continued to block access to the main entrance. Guard observed that staff and patients had gathered in front of the Clinic and

were unable to enter the Clinic because of Dugan. Guard also observed that another male, later identified as Puckett, had blocked the staff entrance of the Clinic. Guard subsequently called the New York City Police Department.

The police arrived and removed Dugan from the main entrance. Guard then observed Puckett move from the staff entrance to the main entrance, taking Dugan's place and blocking the main entrance before being removed by the police.

Employee was interviewed and indicated that on the morning of December 12, 2009, Employee arrived at the Clinic and observed Dugan blocking access to the main entrance. Dugan told Employee, "we're shutting the Clinic down today and there will be no killing of babies."

Employee made several attempts to get around Dugan, but was unable to enter the Clinic. Employee observed that patients were unable to enter the Clinic because Dugan was blocking access to the main entrance.

Through fingerprint analysis, law enforcement agents identified Dugan and Puckett as the individuals who blocked

access to the Clinic.

On December 12, 2009, Dugan and Puckett were arrested.

According to the Government, no victim impact or obstruction of justice adjustments are warranted.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 248(b)(1) and 18 U.S.C. § 3581(b)(7), the maximum term of imprisonment is six months.

If a term of imprisonment is imposed, a term of supervised release of not more than one year may be imposed, pursuant to 18 U.S.C. § 3583(b)(3).

Defendant is eligible for not more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(2).

The maximum fine that may be imposed is $5,000, pursuant to 18 U.S.C. § 3571. A special assessment of $50 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

As the instant offense is a Class B Misdemeanor, the United States Sentencing Guidelines are not applicable.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

This Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, it is concluded that while Puckett's conduct resulted from his personal convictions, it was a knowing violation of the statute enacted to prevent just such conduct. To deter future conduct and to protect the health care clinics, a sentence of four months is warranted.

**The Sentence**

For the instant offense, Puckett will be sentenced to four months' imprisonment to be followed by one year of

supervised release.

Puckett is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Puckett be supervised by the district of his residence.

As mandatory conditions of his supervised release, Puckett shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device. The mandatory drug testing condition is suspended based on the Court's determination that Defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall provide the probation officer with access to any requested financial information.

(2) Defendant shall submit his person, residence,

place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $50, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 12, 2010.

It is so ordered.

**New York, NY**
**October  //  , 2010**

_____
ROBERT W. SWEET
U.S.D.J.